# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Gamada A. Hussein,                                    **Case No. 16-cv-780 (SRN/SER)**

                Plaintiff,

v.

                                      **REPORT AND RECOMMENDATION**

Jeff Sessions,[1]
*U.S. Attorney General*;
U.S. Department of Justice;
James Comey,
*Director, Federal Bureau of Investigation*;
Federal Bureau of Investigation; and
John Does,

                Defendants.

---

    Gamada A. Hussein, pro se, Saint Paul, Minnesota

    D. Gerald Wilhelm, Esq., United States Attorney's Office, Minneapolis, Minnesota, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

    This matter comes before the undersigned on Defendants Jeff Sessions, U.S. Department of Justice, James Comey, Federal Bureau of Investigation, and John Does' (collectively, "Defendants") Motion to Dismiss [Doc. No. 20]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and District of Minnesota Local Rule 72.1(a)(3)(A). *See* (Order of Referral) [Doc. No. 26]. For the reasons stated below, the Court recommends that Defendants' Motion to Dismiss be granted and that this case be dismissed.

---

[1]     On February 9, 2017, Jeff Sessions became the Attorney General of the United States, succeeding Loretta E. Lynch. *See Office of the Attorney General*, United States Dep't of J., https://www.justice.gov/ag (last visited Mar. 2, 2017). Jeff Sessions is therefore automatically substituted as a defendant in this matter. *See* Fed. R. Civ. P. 25(d).

## I.    BACKGROUND

Gamada A. Hussein ("Hussein) filed his complaint on March 28, 2016. (Civil Rights Compl.) [Doc. No. 1]. On May 25, 2016, Hussein filed his first amended complaint. (Am. Civil Rights Compl., "First Am. Compl.") [Doc. No. 11]. In particular, Hussein amended the complaint to remove as defendants the Department of Homeland Security, former Unites States Attorney General Eric Holder, and former Director of the Federal Bureau of Investigations Robert S. Mueller. (*Id.*). On September 20, 2016, Hussein filed his second amended complaint. (Am. Civil Rights Compl., "Operative Compl.") [Doc. No. 18]. In particular, based the parties oral agreement, Hussein removed claims against Defendants Loretta E. Lynch and James Comey in their individual capacities.[2] *Compare* (First Am. Compl. at 1), *with* (Operative Compl. at 1); *see also* (Mem. in Supp. of Mot. to Dismiss) [Doc. No. 21 at 1–2].

Hussein's Operative Complaint alleges a myriad of wrongs instigated by the Defendants. For example:

> Defendants acting in concert and each of them individually have conspired and contributed to the unlawful acts against Plaintiff, which include intense surveillance, physical, mental and psychological torture, oppression, harassment, discrimination, abuse, threats against his life, attempted assassination, intimidation, invasion of privacy and defamation by the government agencies, both local and federal, since 2008 and still going on. The harm against Plaintiff was also carried out by many other government agencies, officials and personnel who were only acting on the orders of and misinformation from Defendants, including line FBI special agents.

(Operative Compl. ¶ 15).

---

[2]    At no time did Hussein seek leave of the Court to file his amended complaints. Nevertheless, because the parties agreed to the amendments made in Hussein's Operative Complaint, the Court addresses the factual allegations and claims in the Operative Complaint. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th. Cir. 2000) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect.").

Hussein asserts that these actions violate his constitutional rights guaranteed under the First, Fourth, Fifth, and Fourteenth Amendments. (*Id.* at 24–33). Hussein alleges eleven claims in total: (I) violations of the Fourth Amendment for taking his wallet at the Hennepin County Medical Center ("HCMC"); (II) violations under 5 U.S.C. § 552(a) for disseminating private records without Hussein's consent; (III) discrimination under 42 U.S.C. § 1981 for interfering with "existing contracts of employment"; (IV) violations under 42 U.S.C. § 1983, the Fourth Amendment, and the Fourteenth Amendment for discriminatory actions based on Hussein's race and country of origin; (V) violation of the Fifth Amendment due to First Amendment deprivations of free speech; (VI) unspecified additional violations under 42 U.S.C. §§ 1983 and 1985 for exercising his First Amendment Rights; (VII) a civil cause of action for criminal mail-theft under 18 U.S.C. § 1708; (VIII) battery; (IX) invasion of privacy including intrusion upon seclusion (IX(a)) and false light (IX(b)); (X) defamation; and (XI) intentional infliction of emotional distress. (*Id.*). In general, the claims can be classified thus: claims I to VI are civil rights claims ("civil rights claims"), claim VII is a mail-theft claim ("mail-theft claim"), and claims VIII to XI are tort liability claims ("tort liability claims").

Hussein asks the Court to enjoin Defendants from taking any further discriminatory actions, for compensatory and punitive damages for the alleged wrongs, and for fees and costs associated with filing this lawsuit. (*Id.* at 34–35).

On October 4, 2016, Defendants filed their Motion to Dismiss, asserting that the Court lacks subject matter jurisdiction over the alleged claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and because Hussein failed to allege claims for which relief can be granted under Federal Rules of Civil Procedure 12(b)(6). (Mot. to Dismiss at 1). In particular, Defendants assert that Hussein's civil rights claims should be dismissed because the United

States has not waived sovereign immunity and the Court therefore lacks subject matter jurisdiction over the civil rights claims. (Mem. in Supp. of Mot. to Dismiss at 4). Defendants also assert that the mail-theft claim should be dismissed because no civil remedies exit for violating the criminal statute, depriving the Court of subject matter jurisdiction over the mail-theft claim. (*Id.*). With respect to the tort liability claims, Defendants assert that Hussein failed to exhaust his administrative remedies under the Federal Tort Claim Act ("FTCA"), 28 U.S.C. § 1346(b), and thus the Court lacks subject matter jurisdiction over the tort liability claims. (*Id.* at 4, 9). Defendants also argue that Hussein's claims should be dismissed because his allegations fail to state claims upon which relief can be granted. *See, e.g.*, (*id.* at 14) (stating that "nothing in the complaint except Hussein's unsupported belief suggests that any agent of the United States was involved").

The Court heard oral argument on Defendants' Motion to Dismiss on December 19, 2016. (Minute Entry Dated December 19, 2016) [Doc. No. 33]. The matter is fully briefed and ripe for consideration.

## II.    DISCUSSION

Defendants seek to have this case dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. to Dismiss at 1).

As a threshold matter, under a 12(b)(1) analysis for lack of subject jurisdiction, the complaint may be challenged on its face or on the truthfulness of stated facts. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Defendants are making a facial attack to Hussein's Operative Complaint in regards to his civil rights and mail theft claims. *See* (Mem. in Supp. of Mot. to Dismiss at 5–9). Thus, for the purposes of addressing these claims, "all of the factual

allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus*, 4 F.3d at 593.

For Hussein's tort liability claims, however, Defendants are challenging the Operative Complaint on the factual basis that Hussein did not exhaust his administrative remedies. *See* (Mem. in Supp. of Mot. to Dismiss at 9–10). Thus, for analysis of these claims, the Court is tasked with reviewing matters outside the pleadings. *See Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir.1990); *see also McClain v. Am. Economy Ins. Co.*, 424 F.3d 728, 734 (8th Cir. 2005). Furthermore, because the underlying question that the Court is tasked with adjudicating relates to the presence of subject matter jurisdiction, the Court may consider matters outside the pleadings without converting Defendants' Motion to Dismiss into a motion for summary judgment. *Osborne*, F.2d at 729 nn. 4, 6. Also—based on Hussein's status as a pro so litigant— the Court must construe his Operative Complaint liberally. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014); *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001).

### A.    Civil Rights Claims

In claims I to VI, Hussein alleges various civil rights violations. (Operative Compl. at 24–30). These claims can be further categorized as claims arising under the Constitution of the United States and claims arising under various federal statutes. Defendants argue that to the extent these civil rights claims arise under the Constitution they should be dismissed for lack of subject matter jurisdiction because Defendants have not waived sovereign immunity from suit. (Mem. in Supp. of Mot. to Dismiss at 4–6). Defendants also assert that to the extent the civil rights claims arise under federal statutes, they should be dismissed because the statues do not apply to the Defendants. *See* (Mem. in Supp. to Dismiss at 6–8).

5

### 1.    Legal Standard

It is well-established that as a sovereign nation, the United States enjoys sovereign immunity against suit. *See U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *Brown v. United States*, 151 F.3d 800, 803 (8th Cir. 1998) (internal quotation marks omitted). "[T]he Government's consent to be sued must be construed strictly in favor of the sovereign." *United States v. Nordic Village Inc.*, 503 U.S. 30, 34 (1992). Thus, the consent may not be enlarged beyond what the consenting language requires. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685 (1983).

### 2.    Analysis

Hussein alleges violations of the First Amendment (claims V and VI), Fourth Amendment (claims I and IV), Fifth Amendment (claim IV), and Fourteenth Amendment (claim IV). Hussein also alleges violations under various civil rights statutes, including 42 U.S.C. § 1982 (claim IV), 42 U.S.C. § 1983 (claim IV), and 42 U.S.C. § 1985 (claim VI). The Court below analyses these claims in both their constitutional and statutory capacities.

#### a.    Constitutional Claims

Hussein alleges violations by the Federal Bureau of Investigations and the Department of Justice, both agencies of the United States, and James Comey and Jeff Sessions in their official capacities. (Operative Compl. at 1). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" because "[i]t is **not** a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). For similar reasons, suits against agencies of the United States Government are

considered suits against the Unites States itself. *Cf. Leoffler v. Frank*, 486 U.S. 549, 554 (1988) (determining whether Congress waived sovereign immunity for suits against the United States Postal Service). Thus, Hussein's claims, whether asserted against employees of the Unites States Government in their official capacities or agencies of the Unites States Government are directed at the United States as an entity which triggers sovereign immunity analysis. *See Leoffler*, 486 U.S. at 552–65; *Graham,* 473 U.S. at 167–68.

Hussein alleges violations of the First Amendment (claims V and VI), Fourth Amendment (claims I and IV), Fifth Amendment (Claim IV), and Fourteenth Amendment (Claim IV). As a threshold matter, by its very language, the Fourteenth Amendment applies only to state action. *See* U.S. Cont. amend. XIV; *Shelley v. Kraemer*, 334 U.S. 1, 7 (1948). Hussein's Operative Complaint names only federal defendants. *See generally* (Operative Compl.). Thus, any claims arising under the Fourteenth Amendment must be dismissed for lack of subject matter jurisdiction. *See Corrigan v. Buckley*, 271 U.S. 323, 330, 331–32 (1926) (holding that the appeal must be dismissed for lack of subject matter jurisdiction, in part because claims arising under the Fourteenth Amendment require state action).

Regarding the remaining claims under the First, Fourth, and Fifth Amendments, it is well-settled that a claim can be brought against federal officials arising under the United States Constitution for violations of constitutionally protected rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Buford v. Runyon*, 160 F.3d 1199, 1203 n. 6 (8th Cir. 1998). The federal government's waiver of sovereign immunity under *Bivens*, however, is limited to defendants in their individual capacities. *See Buford*, 160 F.3d at 1203. Thus, the waiver of sovereign immunity does not extend to claims against government officials in their official capacities. *Id.*; *see also Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982).

Stated differently, because Hussein brings suit against Defendants in their official capacities, sovereign immunity bars those claims. *See Buford*, 160 F.3d at 1203; *see also McCourt v. Rios*, No. 08-cv-6411 (PAM/RLE), 2010 WL 3269905, at *7 (D. Minn. July 16, 2010) (Erickson, Mag. J.), *adopted by* 2010 WL 3269914 (Aug. 16, 2010) (Magnuson, J.); *Hill v. Holinka*, No. 06-cv-4720 (PJS/JJG), 2008 WL 549928, at *2 (D. Minn. Feb. 27, 2008) (Graham, Mag. J., as adopted by Schiltz, J.) ("Other Eighth Circuit cases have held that, where a *Bivens* claim is brought against federal employees in their official capacity, the real party is the United States and so sovereign immunity attaches."). Thus, to the extent that Hussein's claims arise under the Constitution of the United States, the Court recommends that his claims be dismissed for lack of subject matter jurisdiction.

### b.    Statutory Claims

Hussein also alleges claims arising under 5 U.S.C. § 552a (claim II), 42 U.S.C. §§ 1981, 1983, 1985 (claims III, IV, VI). (Operative Compl. at 24–30). 42 U.S.C. §§ 1981, 1983, 1985, however, are not applicable to the Defendants as pleaded by Hussein and thus fail to confer the Court with subject matter jurisdiction.

### i.    5 U.S.C. § 552a

Hussein's claim under the Privacy of Information Act of 1974 pursuant to 5 U.S.C. § 552a fails in this instance because Hussein has not specifically alleged facts essential to show jurisdiction. Thus, Hussein's claim under 5 U.S.C. § 552(a) should be dismissed for lack of subject matter jurisdiction.

Under 5 U.S.C. § 552a, a civil remedy may lie when an agency "disclose[s] any record . . . to any other person . . . except . . . with prior written consent of . . . the individual to whom the record pertains." *See* 5 U.S.C. § 552a(b); *see also* 5 U.S.C. § 552a(g)(1)(D) (stating

that a civil remedy exists for failure "to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual"). But this civil remedy is predicated on a two-year statute of limitations. *See* 5 U.S.C. § 552a(g)(5).

"[F]ailure to file a Privacy Act claim within the two-year period is jurisdictional." *Flowers v. Exec. Office of the President*, 142 F. Supp. 2d 38, 44–45 (D.C. Cir. 2001). It is Hussein's responsibility to "allege in his pleading the facts essential to show jurisdiction." *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). Importantly, jurisdiction may not "be inferred argumentatively from averments in [Hussein's] pleadings." *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 547 (1986) (internal quotation omitted). Thus, jurisdiction "must affirmatively and distinctly appear" in the complaint. *Norton v. Larney*, 266 U.S. 511, 515–16 (1925).

Here, Hussein has not pleaded factual assertions with sufficient specificity to allow this Court to ascertain whether Hussein's Operative Complaint satisfies the limitations period. In particular, Hussein provides no factual assertions regarding what information was unlawfully disclosed, by whom this information was unlawfully disclosed, or when this information was unlawfully disclosed. Of import with respect to the jurisdictional question is the complete omission of any facts regarding when the alleged unlawful conduct occurred. *See, e.g.*, (Operative Compl. at 2) (general statement of jurisdiction and venue). "Without these basic factual assertions, the court has no basis to determine whether [Hussein's] claims satisfy the applicable limitations period . . . . This omission is quite fatal, as the court cannot proceed if [Hussein] has not established the court's jurisdiction to hear [his] claims." *Flowers*, 142 F. Supp. 2d at 45.

Consequently, Hussein's Operative Complaint fails to establish subject matter jurisdiction for his claim arising under 5 U.S.C. § 552a, and should be dismissed.

### ii.    42 U.S.C. §§ 1981, 1983

Hussein's claims under sections 1981 and 1983 also fail to confer subject matter jurisdiction. Namely, the statutes are directed to actions under color of state law. Hussein names federal defendants only; the Defendants are not acting under the color of state law. *See generally* (Operative Compl.). Thus, the Court recommends to the extent that Hussein's civil rights claims arise under 42 U.S.C. §§ 1981 and 1983, these claims be dismissed for lack of subject matter jurisdiction.

42 U.S.C. § 1981 states in relevant part

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). But, "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment **under color of State law**." *Id.* § 1981(c) (emphasis added). The "color of State law" limitation, by its terms, means that 42 U.S.C. § 1981 does not provide a cause of action against the United States. *See, e.g.*, *Dotson v. Friesa*, 398 F.3d 156, 162 (2nd Cir. 2005); *Conner v. Greef*, 99 F. App'x. 577, 580 (6th Cir. 2004); *Davis-Warren Auctioneers, J.V. v. F.D.I.C.*, 215 F.3d 1159, 1161 (10th Cir. 2000); *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 725–26 (7th Cir. 2000); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998); *Geyer Signal, Inc. v. Minn. Dep't of Transp.*, No. 11-cv-321 (JRT/LIB), 2014 WL 1309092, at *21 (D. Minn. Mar. 31, 2014) (Tunheim, J.).

As stated above, Defendants are employees in their official capacities or agencies of the federal government; the real party in interest is the United States. *See Leoffler*, 486 U.S. at 554; *Graham,* 473 U.S. at 166. Consequently, Hussein's claims arising under 42 U.S.C. § 1981 should be dismissed for lack of subject matter jurisdiction.

42 U.S.C. § 1983 states in relevant part

> Every person who, **under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia**, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(emphasis added). It is well-settled that the plain meaning of the statute prevents suits against the Unites States. *See Davis v. United States*, 439 F.2d 1118, 1119 (8th Cir. 1971) (holding 42 U.S.C. § 1983 "by its plain language . . . does not authorize redress against the United States"). Because Hussein's allegations are against the United States, 42 U.S.C. § 1983 provides no jurisdictional basis for his lawsuit. Thus, to the extent Hussein alleges claims arising under 42 U.S.C. § 1983, those claims should be dismissed for lack of subject matter jurisdiction.

### iii.    42 U.S.C. § 1985

There are three provisions to 42 U.S.C. § 1985. Hussein makes no specific recitation of which provision he believes Defendants violated. (Operative Compl. at 29–30). Nevertheless, the only provision that reasonably applies is § 1985(3); sections 1985(1) and 1985(2) address interfering with officers of the United States from performing their duties and obstructing justice through the intimidation of parties, witnesses, and jurors, respectively.

Section 1985(3) states in part

> If two or more persons in any State or Territory conspire . . . or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(c). But, "[s]ection 1985(3) does not confer liability on a federal agency because the United States is not a 'person' within the meaning of § 1985(3)." *Cobb v. U.S. Dep't of Energy*, 487 F. Supp. 2d 1049, 1056 (D. Minn. 2007) (Davis, J.). Thus, like sections 1981 and 1983, "[t]he United States is not subject to suit under section 1985(3)." *Mousseaux v. United States*, 28 F.3d 786, 787 (8th Cir. 1994). Consequently, to the extent that Hussein asserts claims arising under 42 U.S.C. § 1985, those claims should be dismissed for lack of subject matter jurisdiction.

In sum—viewing all factual allegations in Hussein's Operative Complaint as true—the claims arising under the United States Constitution and the asserted federal statutes fail to confer subject matter jurisdiction. Consequently, the Court recommends that Hussein's civil rights claims (claims I to VI) be dismissed for lack of subject matter jurisdiction.

### B.    Mail-Theft Claim

In claim VII, Hussein alleges that Defendants stole his mail in violation of criminal statute 18 U.S.C. § 1708 and seeks damages in this civil action. (Operative Compl. at 30). Because the Court finds that there is no private cause of action under 18 U.S.C. § 1708, the Court recommends that claim VII be dismissed for lack of subject matter jurisdiction.

### 1.    Legal Standard

"In determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute." *Thompson v. Thompson*, 484 U.S. 174, 179

(1988). In general, the courts use a four-factor test to determine Congress's intent. *Id.* These factors are

> (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether Congress intended, explicitly or implicitly, to create such a remedy; (3) whether a private remedy is consistent with the underlying legislative scheme; and (4) whether a private right based on a federal statute would interfere with an area relegated to state law.

*Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 407–08 (8th Cir. 1999). "Congressional intent is the **determining** factor and is not merely to be weighed against the other . . . factors." *Id.* at 408 (emphasis added).

### 2.    Analysis

Courts are reluctant to imply private causes of action from a federal statute. *See, e.g.,* *Hofbauer v. Nw. Nat'l Bank of Rochester*, 700 F.2d 1197, 1200 (8th Cir. 1983) (citing Supreme Court cases). For example, "a bare criminal statute does not necessarily preclude an implied private right of action, [but] there should at least [be] a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Wisdom*, 167 F.3d at 408. Stated differently, there must be a "clear indication that Congress intended to create" a private cause of action. *See id*. There is not a clear indication that Congress intended 18 U.S.C. § 1708 to provide for a private cause of action. 18 U.S.C. § 1708 states

> Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

> Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

> Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—
>
> Shall be fined under this title or imprisoned not more than five years, or both.

Nothing in the language of 18 U.S.C. § 1708 nor in the statute's legislative history suggests Congress intended to create a private cause of action. Thus, none can be implied. *Accord Wisdom* 167 F.3d at 408; *Hofbauer* 700 F.2d at 1200. Consequently, the Court finds that there is no private cause of action under 18 U.S.C. § 1708.

Courts in other districts have also found that no private cause of action exists under 18 U.S.C. § 1708, further supporting this Court's views.[3] *See, e.g.*, *Stephenson v. Murray*, Nos. 2:14–cv–1755, 2:14–cv–2350, 2014 WL 7015119, at *3 (S.D. Ohio Dec. 11, 2014); *Zahl v. Kosovsky*, No. 08 Civ. 8308, 2011 WL 779784, at *10 (S.D.N.Y Mar. 3, 2011); *Sciolino v. Marine Midland Bank–Western,* 463 F. Supp. 128, 130–31 (W.D.N.Y. 1979) (holding "[a] civil claim arising out of an alleged violation of penal statutes relating to the mails i.e., 18 U.S.C. §§ 1701, 1702, 1703, 1708 and 1709 is not" cognizable (citations omitted)). In fact, this Court could find no case that suggested that a private cause of action exists under 18 U.S.C. § 1708. Thus, Hussein's civil claims under 18 U.S.C. § 1708 must fail and the Court recommends that his mail-theft claim be dismissed for lack of subject matter jurisdiction. *Cf. Wisdom* 167 F.3d at 409.

### C.    Tort Liability Claims

---

[3]    It does not appear that other courts in this District or this Circuit have analyzed 18 U.S.C. § 1708 to determine if a private cause of action exists under the statute. In *Carpenter v. Garland County Prob. & Parole Staff*, No. 07-6072, 2008 WL 276352, at *4 (W.D. Ark. Jan. 30, 2008), however, it was held that no private cause of action existed under 18 U.S.C. § 1701. Sections 1701 and 1708 are criminal statutes relating to the mail. *Compare* 18 U.S.C. § 1701 (obstruction of mails generally), *with* 18 U.S.C. § 1708 (theft or receipt of stolen mail matter generally). Thus, the holding in *Carpenter*, while not conclusive, is informative.

As stated above, Hussein asserts torts claims under the FTCA for (VIII) battery; (IX) invasion of privacy including intrusion upon seclusion (IX(a)) and false light (IX(b)); (X) defamation; and (XI) intentional infliction of emotional distress. Because Hussein has failed to exhaust his administrative remedies, the Court lacks subject matter jurisdiction over these claims.

### 1.    Legal Standard

Under 28 U.S.C. § 1346(b) of the FTCA, the United States Government may be sued as a tortfeasor. As a result—under the FTCA—the United States Government provides a limited waiver of its sovereign immunity. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484–85 (2006) ("The FTCA, in turn, waives sovereign immunity in two different sections of the United States Code."). This waiver of sovereign immunity has various limitations, however. In particular:

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, **unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail**.

28 U.S.C. § 2675(a) (emphasis added). The FTCA "provides that an action shall not be instituted upon a claim against the United States for money damages unless the claimant has first exhausted his administrative remedies." *McNeil v. United* States, 508 U.S. 106, 107 (1993). The Eighth Circuit has determined that section 2675(a) "is a jurisdictional prerequisite to filing an FTCA action in federal district court." *Mader v. United States*, 654 F.3d 794, 807 (8th Cir. 2011). Thus, where exhaustion has not occurred, FTCA claims must be dismissed "for want of subject-matter jurisdiction." *See id.*

### 2.    Analysis

As a threshold matter, this Circuit has established that "[p]resentment of an administrative claim is jurisdictional and must be **pleaded** and proven by the FTCA claimant." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) (emphasis added). In *Jones v. Bock*, 549 U.S. 199 (2007), however, the Supreme Court rejected a similar heightened pleading standard under the Prison Litigation Reform Act ("PLRA"). *See Jones* 549 U.S. at 213. So, "[i]t is unclear if the heightened pleading standard, which was imposed by some Courts, including our Court of Appeals, under the FTCA, has survived the Supreme Court's holding in *Jones v. Bock*." *Dasta v. Shearin*, No. 04-cv-4475 (MJD/RLE), 2007 WL 4952768 at *17 (D. Minn. Nov. 15, 2007) (Erickson, C. Mag. J.), *adopted by* 2008 WL 1889953 (Jan. 22, 2008) (Davis, J.). While still an open question, many courts have found that exhaustion under the FTCA must be pleaded. *See, e.g.*, *Ameur v. Gates*, 950 F. Supp. 2d 905, 920 n. 6 (E.D. Va. 2013); *Colbert v. U.S. Postal Serv.*, 831 F. Supp. 2d 240, 243 (D.D.C. 2011); *Lubrano v. United States*, 751 F. Supp. 2d 453, 455 (E.D.N.Y 2010); *see also Ellis v. United States*, No. 06-305, 2009 WL 440390 at *17 n. 17 (W.D. Pa. Feb. 23, 2009) (Baxter, Mag. J., as adopted by McLaughlin, J.) (finding that the PLRA exhaustion requirements and the FTCA exhaustion requirements are of a different character and thus exhaustion under the FTCA is required to be pleaded).

Here, Hussein has not pleaded that he exhausted his administrative remedies. Under this Court's current understanding of whether exhaustion must be pleaded, Hussein's tort claims (claims VIII to XI) fail. The Court lacks subject matter jurisdiction over the alleged tort claims because Hussein failed to exhaust administrative remedies. *See Hayes v. Fed. Bureau of Prisons*, No. 12-cv-0577 (PJS/FLN), 2014 WL 1017954, at *3 (D. Minn. Mar. 17, 2014) (Schiltz, J.) (stating that "a failure to exhaust administrative remedies" is a finding "that a court lacks jurisdiction over the FTCA claim—and a dismissal for lack of jurisdiction is properly without

prejudice"); *see also County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004) ("A district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent."). Therefore, this Court must recommend that Hussein's tort claims be dismissed without prejudice.[4]

Thus, the Court recommends that Hussein's tort liability claims (claims VIII to XI) be dismissed without prejudice for lack of subject matter jurisdiction due to failure to exhaust administrative remedies.

**D.    Failure to State a Claim**

As described above, Hussein's claims fail for lack of subject matter jurisdiction. The Court also finds Hussein's Operative Complaint fails to state a claim for which relief can be granted. Even if the Court had subject matter jurisdiction for Hussein's claims, they could alternatively be dismissed pursuant to Rule 12(b)(6).

**1.    Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

---

[4]    Defendants also assert that Hussein's tort claims for false light (claim IX(b)) and defamation (claim X) should be dismissed with prejudice grounded on futility in light of the United States' sovereign immunity with respect to those claims. *See* (Mem. in Supp. of Mot. to Dismiss at 13–14). Dismissal with prejudice is not appropriate, however. *See Roth v. United States*, 476 F. App'x 95 (8th Cir. 2012) (per curiam) (unpublished opinion) (affirming the judgement to dismiss for lack of subject matter jurisdiction grounded on the presence of sovereign immunity, but clarifying that the judgement is without prejudice) (citing *County of Mille Lacs*, 361 F.3d at 464; *Murray v. United States*, 686 F.2d 1320, 1327, 1327 n. 14 (8th Cir. 1982) (affirming dismissal without prejudice where dismissal was granted on grounds of sovereign immunity)).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "[B]are assertion[s] . . . will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Thus, the pleaded factual allegations "must be enough to raise a right of relief above the speculative level." *Id.* at 555.

### 2.    Analysis

#### a.    5 U.S.C. § 552a

As discussed above, Hussein pleaded insufficient facts to overcome a facial attack of his Operative Complaint for the purposes of conferring this Court with subject matter jurisdiction. Likewise, these failures implicate Hussein's failure to state a claim for which relief can be granted. In particular, Hussein provides no particularized facts about what protected information was disclosed, when the disclosure occurred, or which agency allegedly disclosed the information. Furthermore, Hussein provides no reasonable connection between the alleged disclosure and any of his alleged harms. *See Brown v. Dep't of Veteran Affairs*, No. 15-0172, 2015 WL 6149232, at *2 (W.D. Mo. Oct. 19, 2015) (stating that the "plaintiff does not allege what agency disclosed the records, when that disclosure occurred, facts demonstrating a causal connection for how the disclosure adversely affected him, or that the disclosure was willful" when granting a motion for a more definite statement with the provision that plaintiff's 5 U.S.C. § 552a claim would be dismissed under 12(b)(6) should corrective action not be taken).

In sum, Hussein's Operative Complaint fails to state a claim for relief under 5 U.S.C. § 552a.

#### b.    Remaining Claims

Similarly, with respect to Hussein's remaining claims, Hussein's Operative Complaint is devoid of sufficient factual support to meet the pleading standards espoused in *Twombly* and

*Iqbal.* Stated differently, nothing pleaded in Hussein's Operative Complaint rises above mere speculation.

Hussein's Operative Complaint consists of conclusory allegations and bare assertions with little to no factual support. *See, e.g.*, (*id.* ¶ 28) (stating that Hussein "believes" individuals received "surveillance video from outside sources" which led to Hussein's harassment); (*id.* ¶ 34) (asserting he "felt" that he was the target of a plot against his life when an unnamed coffee shop worker poured something in his coffee); (*id.* ¶ 40) (losing a job because he "believed" law enforcement agencies passed false information about him to the hiring manager); (*id.* ¶ 42) (alleging that he "believed" an FBI agent had told a recruiter that Hussein could not do the job).

In support of his claims that he was irradiated, for example, Hussein states that he "felt some fatigue and burning sensations but . . . didn't seek medical attention at the time," nor does he identify the particular source of his radiation exposure. (*Id.* ¶ 45); *see also* (*id.* ¶ 48) (alleging a second incident of being irradiated, based solely on his observation that he had symptoms "very similar to those" he experienced during his first alleged exposure to radiation). In both instances, Hussein fails to identify who allegedly exposed him to radiation. (*Id.* ¶¶ 45, 48).

Furthermore, there is barely a scintilla of support tying these allegations to the Defendants. Hussein's Operative Complaint consists of 172 paragraphs, including both claims and factual assertions on which those claims are based. There are a number of places where Hussein mentions state police. *See, e.g.*, (*id.* ¶ 26) (alleging a uniformed police officer and a plain clothes police office "encircled" the room while Hussein was taking an exam at the University of Minnesota); (*id.* ¶ 27) (alleging the police and undercover agents followed, intimidated, and harassed Hussein); (*id.* ¶ 31) (alleging harassment at the hands of police "[o]utside of the school in Rochester"); (*id.* ¶ 34) (stating that Roseville Police officers were

outside the coffee shop when he exited); (*id.* ¶ 77) (alleging that when Hussein went to the hospital for treatment of nausea and a "burning sensation all over his body" police were already there). But—as described above—Hussein does not name state actors in this suit, including the state police officers that he alleges mistreated him.

Yet there is barely any mention of federal agents, in general, and nothing to support Hussein's myriad claims against Defendants more specifically. *See* (*id.* ¶ 39) (alleging that an FBI agent tried to distract him while he took a test); (*id.* ¶ 42) (alleging that he "believed" an FBI agent had told a recruiter that Hussein could not do the job); (*id.* ¶ 64) (alleging that during a visit to an FBI office, an FBI duty agent asked Hussein whether he had "borrowed some money from other people"); (*id.* ¶ 73) (alleging that people told Hussein about FBI agents choking him, but Hussein makes no claims that FBI agents actually choked him); (*id.* ¶¶ 89, 90) (alleging talking to FBI agents about perceived surveillance and harassment who instructed Hussein to "start locally"); (*id.* ¶ 92) (alleging FBI agents at the FBI Office in Brooklyn Center, Minnesota questioned him about when he last saw a physician); (*id.* ¶ 93) (detailing a discussion he had with FBI agents regarding being compensated for the wrongs Hussein alleges). None of these factual allegations alone or in combination provide the Court with a sufficient factual basis to suggest that the Defendants are liable under any of Hussein's eleven enumerated claims. [5]

---

[5]      This would be true regardless of whether Jeff Sessions and James Comey were sued in their individual or official capacities. All of Hussein's factual allegations are too attenuated to establish a connection between Defendants and the alleged harm, regardless of the capacity in which they were sued. *See Iqbal*, 556 U.S. at 678. That is, in Defendants' official capacities, there is nothing to suggest that "a policy or custom of the entity violated the plaintiff's rights." *See Gorman v. Bartch*, 152 F.3d 907, 914 (1998). Likewise, there is nothing to suggest that Defendants acted with sufficient personal involvement in their respective individual capacities necessary to establish "personal liability for individual actions . . . in the course of their duties." *Id.* Therefore, the presence of claims against Defendants in their individual capacities—that Hussein removed at an earlier stage in this litigation—would have no material impact on this Court's Report and Recommendation.

For example, the above cited paragraphs—which form the entire universe of interactions with federal government agents in Hussein's Operative Complaint—omit any relationship to Hussein's wallet, which forms the basis of his Fourth Amendment Claims. Likewise, there is nothing to suggest a relationship between the Defendants and any of Hussein's civil rights claims. Hussein provides no reasonable basis by which to infer that Defendants came in contact with Hussein's mail, which forms the basis of his mail-theft claim. In addition, there is nothing to suggest from the above that Defendants had any involvement in subjecting Hussein "to poisoning, radiation, injection of foreign substance into his body and flushing [sic] of intense light into his eyes" which forms the basis of his battery claim. (*Id.* ¶ 151). For similar reasons, therefore, there is nothing to create a reasonable inference that Defendants are liable for any of Hussein's tort liability claims.

What Hussein's Operative Complaint does address, however, are his inter-personal run-ins with various members of the community and his co-workers, none of whom appear to be federal government employees nor are they named as defendants in this lawsuit. *See, e.g.*, (*id.* ¶ 20) (stating he had to confirm his contact information with an employee at a Western Union office before money could be transferred); (*id.* ¶ 22) (discussing a party where he was asked lots of personal questions by party-goers); (*id.* ¶ 33) (alleging he "believed" his co-workers were whispering about him "after they received some information from outside sources"); (*id.* ¶ 35) (alleging that co-workers were following him and indicated to each other that Hussein was "still fully functional"); (*id.*) (stating that a coworker made lewd comments about Hussein's genitals); (*id.* ¶ 43) (discussing an exchange between an unidentified man and Hussein's work-place trainer, where Hussein was described as "hard to train"); (*id.* ¶¶ 51–53) (detailing various encounters with co-workers); (*id.* ¶ 58) (describing a run-in with a photographer at his bank); (*id.*

¶ 61) (alleging that co-workers talked about the fact that Hussein had been injected with salmonella); (*id.* ¶ 69) (alleging that co-workers told Hussein that they know he is going to die because of the poison that he had been given); (*id.* ¶ 72) (detailing an argument between Hussein and his co-workers about the appropriateness of "watching a religious song on YouTube"); (*id.* ¶ 79) (alleging one of his co-workers stated "burn in hell" and another being overheard saying "he is not even close to death"); (*id.* ¶ 85) (alleging co-works threatened to jail him and shoot him for his "terrorist acts").

In sum, there is nothing to suggest a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Consequently, even if the Court had subject matter jurisdiction, Hussein's Operative Complaint fails to state a claim upon which relief can be granted.

## III.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Jeff Sessions, U.S. Department of Justice, James Comey, Federal Bureau of Investigation, and John Does' Motion to Dismiss [Doc. No. 20] be **GRANTED**; and

2. This case be dismissed **without PREJUDICE**.

Dated: March 03, 2017

 *s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.